**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| **BRADLEY J. POWELL and HOLLY W. POWELL, individually and on behalf of all others similarly situated,** )<br>)<br>)<br>)<br>    Plaintiffs, )<br>)<br>       vs. )<br>)<br>**ALAN R. MILLER,** )<br>)<br>    Defendant. ) | CAUSE NO.  1:03-cv-1897-SEB/VSS |

**ENTRY ON MOTION TO DISMISS**

This cause is before the Court on Defendant Alan R. Miller's motion to dismiss this case for lack of subject matter jurisdiction. The motion is fully briefed, and the Court, being duly advised, DENIES the motion for the reasons set forth below.

Background

In considering Miller's motion, we accept as true the following factual allegations contained in the complaint and must draw all reasonable inferences from those allegations in Plaintiffs' favor as the non-moving parties. *Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage Dist.,* 382 F.3d 743, 751 (7th Cir. 2004). Plaintiffs Bradley and Holly Powell were indebted to Saint John's Health System ("St. John's") for health care services. In October 2002, the Powells' account allegedly went into default. At that time, the balance owed was $1215.19. St. John's assigned the Powells' accounts to Collection Specialists, Inc. ("CSI") for collection. CSI promptly sent a letter to the Powells that stated, in part, that the amount of their debt was $1600.00, rather

than $1215.29, because CSI had added a collection agency fee to the amount that was owed to St. John's.

On April 3, 2003, St John's sold, assigned and transferred all rights, title and interests in Mr. Powell's account to CSI. The amount of debt assigned was stated as $1600.00; again, this included the collection agency fee added by CSI. CSI hired Defendant Miller, an attorney, to aid in its efforts to collect on the Powells' account. On May 7, 2003, Miller sent a letter to Mr. Powell stating that the amount of his debt was $1648.02 ($1200.43 principal, $399.57 collection fees, and $48.02 interest).[1] On the same day, Miller sent a letter to Mrs. Powelll stating that the amount of her debt was $1248.45 ($1200.43 principal and $48.02 interest). The principal amount stated in these letters did not credit the Powells for at least two checks that they had submitted as payment to CSI.

On May 20, 2003, Miller filed a Notice of Small Claim ("the Notice") in Madison County, Indiana, County Court 1, Small Claims Division, against the Powells on behalf of CSI. The Notice sought $1200.43 for the debt, $48.02 in interest, $420.00 in attorney fees, $399.57 for "collection costs," and $42.00 in court costs, for a total of $2110.02. On November 21, 2003, the Madison County court entered judgment against Mrs. Powell in the amount of $1290.45[2] and against Mr. Powell in the amount of $2110.00.

---

[1] Since October 2002, the Powells had made a payment of $21.21 on their account; CSI had credited their account $14.76 and taken $6.45 as a collection agency fee.

[2] The parties stipulated before trial that CSI would not seek attorney fees or collection fees against Mrs. Powell.

The Powells filed this action on December 3, 2003,[3] alleging generally that the attorney fees and collection costs sought in the Notice included items beyond those things which are compensable collection costs under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and that the principal amount sought in the Notice failed to credit all of the payments they made. In Count I of their Complaint, they allege that Miller[4] violated numerous provisions of the FDCPA.[5] In Count II of their Complaint, the Powells allege that Miller's actions constituted an act of deception as defined in Ind. Code 35-43-5-3(a)(2), because by seeking unreasonable attorney and collection fees and misstating the amount of principal owed he "ma[de] a false or misleading written statement with intent to obtain money or property," and therefore they

---

[3]This case originally was filed as a putative class action. However, Plaintiffs failed to move for class certification, despite being given two extensions of time to do so; a third, untimely motion for extension of the deadline recently was denied. Therefore, this case now is as an individual action between the Powells and Mr. Miller.

[4]Plaintiffs originally named CSI, St. John's, and Philip Hilger, an employee of St. John's, as defendants along with Miller, but the other defendants have been dismissed.

[5]Specifically, the Powells argue that Miller violated 15 U.S.C. § 1692d "by engaging in conduct the natural consequence of which is to harass, oppress, or abuse consumers"; 15 U.S.C. § 1692e "by using false, deceptive, or misleading representations or means in connection with the collection of a consumer's debt"; 15 U.S.C. § 1692e(2)(a) "by falsely representing the character, nature, and amount of the alleged debt"; 15 U.S.C. § 1692e(2)(b) "by falsely representing the compensation which may be lawfully received by [him] for the collection of the subject debts; 15 U.S.C. § 1692e(5) "by threatening to take, or by actually taking, action that cannot or could not legally be taken"; 15 U.S.C. § 1692f "by using unfair or unconscionable means to collect or attempt to collect the subject debts; and 15 U.S.C. § 1692f(1) "by attempting to collect an amount (including any interest, fee, charge, or expense incidental to the principal obligation) when such amounts were not expressly permitted by law or the agreement giving rise to the alleged debt, and in fact were prohibited by statute, rule, or custom, or all." Complaint ¶ 48.

are entitled to treble damages pursuant to Ind. Code 34-24-3-1.  Count III of the Powell's Complaint asserts a claim for breach of contract.  Finally, in Count IV, the Powells allege that Miller's conduct constituted "racketeering activity," specifically mail fraud, as defined by U.S.C. § 1961(1).

## Discussion

Miller argues that this court lacks subject matter jurisdiction over the Powells' claims pursuant to the *Rooker-Feldman* doctrine.  "The *Rooker-Feldman* doctrine provides that lower federal courts are precluded from exercising jurisdiction over claims that would require them to review a final judgment of a state court."  *Rizzo v. Sheahan*, 266 F.3d 705, 713 (7th Cir. 2001) (citing *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).  As the Supreme Court recently explained, the doctrine is a narrow one, and applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 125 S.Ct. 1517 (2005), 1521-22 (2005).

> In assessing the applicability of the *Rooker-Feldman* doctrine in a particular case, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.  If the injury alleged resulted from the state court judgment itself, the *Rooker-Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional.  By contrast, if the alleged injury is distinct from the state court judgment and not inextricably intertwined with it, the *Rooker-Feldman* doctrine does not apply, although the doctrines of claim and issue preclusion may be applicable.  The pivotal

> inquiry is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim. In this regard, we have recognized a distinction between a federal claim alleging injury caused by a state court judgment and a federal claim alleging a prior injury that a state court failed to remedy. A federal court is precluded from considering the former, but not the latter, under the *Rooker-Feldman* doctrine.

*Long v. Shorebank Development Corp.*, 182 F.3d 548, 555 (7th Cir. 1999) (citations and internal quotation marks omitted.

The Powells filed this case after they lost in state court, therefore potentially implicating the *Rooker-Feldman* doctrine. The operative question pursuant to *Exxon Mobil Corp.* is whether resolving the Powells' claims in this case would require us to review the state court's judgment. We find that it would not. Rather, the Powells' claims are independent of the state court's judgment: all of the acts about which they complain–set forth at length above–occurred prior to entry of judgment, and their claims would exist even if they had won in state court.[6] Accordingly, the *Rooker-Feldman* doctrine is inapplicable, and this court does not lack subject matter jurisdiction over the Powells' claims.

---

[6]This is not to say that the state court's judgment is irrelevant to this case. It might well be that, in light of the issues that were or could have been raised in the state court proceedings, some or all of the Powells' claims in this case are barred by the doctrine of res judicata; however, that issue is not before us at this time and, because its resolution does not affect our jurisdiction, *see Zurich American Ins. Co. v. Superior Court for State of Ca.*, 326 F.3d 816, 824 n. 5 (7th Cir. 2003), we decline to consider it sua sponte.

Conclusion

For the reasons set forth above, Miller's motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

SO ORDERED:  01/26/2006

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Richard B. Gonon
rgonon@aol.com

Clifford W. Shepard
consprolaw@aol.com
shepardcw@aol.com;consproadvocate@aol.com;ToniMHelton@aol.com